**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| **AUNALI KHAKU individually and on behalf of all others similarly situated,** | |
| *Plaintiff*, | |
| **v.** | |
| **DELTA AIR LINES, INC.** | Case No.:_____ |
| *Defendant*. | |
| | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Aunali Khaku ("Plaintiff") brings this Class Action Complaint against Defendant Delta Air Lines, Inc., ("Defendant") as an individual and on behalf of all others similarly situated, by and through their attorneys, and alleges as follows, based on personal knowledge and the investigation of their attorney:

### NATURE OF THE ACTION

1.    Plaintiff brings this class action against Defendant for their cancellation of thousands of flights purchased by consumers and subsequent failure to refund in full or in part for the grave inconvenience it caused.

2.    On Friday, July 19, 2024, an automatic update to a cybersecurity software developed by CrowdStrike resulted in millions of computers operating with Microsoft Windows crashed, resulting in Delta's inability to operate their flights.[1]

---

[1] https://www.cbsnews.com/news/delta-flight-cancellations-wednesday-ed-bastian/ (last accessed August 12, 2024).

3.      The CrowdStrike outage affected CrowdStrike customers who utilize Microsoft Windows products, including most airports and airlines.

4.      Airlines and airports utilize Microsoft Office 356 for travel needs like scheduling, and transporting crew members, passengers, and cargos to their appropriate destinations.

5.      However, the CrowdStrike outage inhibited airlines from conducting their day-to-day activities, which resorted to manual operations, such as checking in passengers in on paper. This severely crippled airlines, airports, and passengers from attending their scheduled programs accordingly.

6.      Moreover, the CrowdStrike outage resulted in massive delays globally. According to FlightAware, a flight tracking firm, there were more than 4,000 flight cancellations and 35,000 flight delays worldwide by Friday afternoon.[2]

7.      Delta specifically reported more than 4,500 flight cancellations between Friday, July 19, 2024, and Sunday, July 21, 2024.[3]

8.      By the close of the weekend, Delta one of the few airlines that failed to recover and resume normal operations.

9.      Delta continued to cancel flights into the new workweek. On Monday, July 22, it was reported that Delta canceled more than 1,250 flights. These cancellations accounted for nearly 70% of all lights within the United States.[4] No other U.S. airline had canceled one-tenth as many flights.[5]

---

[2] https://www.wired.com/story/crowdstrike-windows-outage-airport-travel-delays/ (last accessed August 12, 2024).
[3] https://www.cnn.com/2024/08/07/business/delta-passengers-sue-crowdstrike-meltdown/index.html (last accessed August 12, 2024).
[4] *Id.*
[5] *Id.*

10.     On Tuesday, July 23, Delta continued to cancel flights. By 2pm that same day, more than 450 flights had been canceled and more than 1,000 flights were delayed.[6]

11.     Delta continued to delay and cancel flights through July 31, 2024, nearly two weeks after the CrowdStrike outage, although Delta purports that its "operational reliability" went back to "normal" on Thursday, July 25, 2024.[7]

12.     Delta continues to blame its inability to resume their services on Windows software and its inability to fix problems with its crew tracking system, leaving it unable to find the pilots and flight attendants needed for planes to fly.[8]

13.     Delta's failure to quickly recover from the CrowdStrike outage left passengers stranded in airports across the country and the world thousands of miles away from their desired destination.

14.     To add insult to injury, when affected passengers requested refunds for their canceled or delayed flights, Delta refused or ignore their requests. In addition, Delta refused to provide all affected passengers with meals, hotels, and ground transportation vouchers, despite their previous commitments and continuous refusal to approve requests for reimbursements.

15.     Delta's failures affected passengers who by Delta's actions—were forced to spend thousands of dollars in unexpected expenses—including flights from other airlines, hotels, rental cars, ground transportation vouchers, and food. Additionally, Delta failed to provide passengers access to their belongings, thereby separating them from clothes, medications, and other belongings.

---

[6] *Id.*

[7] https://news.delta.com/update/july-2024-operation/delta-starts-thursdays- operation-zero-cancellations (last accessed August 12, 2024)

[8] https://news.delta.com/update/july-2024-operation/delta-people-working-247- restore-operation-support-customers-get-crews (last accessed August 12, 2024).

16.     Delta's actions were unfair, unlawful, and unconscionable, thus unjustly enriching themselves at the expense of its customers. Accordingly, Plaintiff brings this action in order to retrieve their monies for each and every similarly situated consumer Delta wronged by refusing to issue full refunds for flights cancelled or significantly affected as a direct and proximate result of the CrowdStrike outage.

## JURISDICTION & VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332(d)(2), because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

18.     This Court has personal jurisdiction over Defendant because its principal place of business and it's headquartered in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the forum state by conducting substantial business in this judicial district.

19.     Venue is proper under 28 U.S.C §1391(b) because this is Defendant's principal place of business and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

20.     Plaintiff Aunali Khaku is a citizen of the State of Florida. At all relevant times, Plaintiff has been a resident of Sanford, Florida.

21.     Defendant, Delta Air Lines, Inc., maintains a principal place of business at 1030 Delta Boulevard, Atlanta, Georgia 30354.

4

## FACTUAL ALLEGATIONS

**CrowdStrike Outage and Impacted Airlines**

22.     On Friday, July 19, 2024, at approximately 12:09am EST, a faulty automatic update to a cybersecurity software developed by CrowdStrike resulted in millions of computers running Microsoft Windows to crash.[9]

23.     This outage impacted CrowdStrike customers who use Microsoft Windows products, including many airports and airlines.

24.     As stated earlier, most airlines utilize Microsoft Office 365 for scheduling and other travel needs like transporting crew members, passengers, and cargo from one place to the next.

25.     Although CrowdStrike fixed the defective update by 1:27am EST on July 19, Windows users still managed to experience system crashes and outages throughout the day.[10]

26.     The CrowdStrike outage caused many clients who relied on their cloud-based technology to resort to manual operations, which included checking passengers on paper rather than through their online systems which significantly reduced processing times.

27.     As a result of the CrowdStrike outage, massive delays and cancellations ensued throughout the global airline industry. According to flight tracking from FlightAware, more than 4,500 flight cancellations and 35,000 flight delays worldwide by Friday afternoon.[11]

28.     Once systems were back online, the phenomenon of "delay propagation" prevented immediate recovery. The idea of delay propagation occurs when a delay at a flight stage causes a ripple effect in the subsequent stages of a flight. It affects traffic in and out of the airport. Also,

---

[9] https://www.crowdstrike.com/falcon-content-update-remediation-and-guidance- hub/ (last accessed August 12, 2024).
[10] *Id.*
[11] https://www.wired.com/story/crowdstrike-windows-outage-airport-travel-delays/ (last accessed August 12, 2024).

arrival delays are tracked at the end of each flight leg traveled by the same aircraft identified by a tail number.[12]

29.     As a result, most airlines continued to cancel and delay flights throughout the weekend. Specifically, Delta, reportedly canceled more than 4,500 flights between Friday, July 19, 2024, to Sunday, July 21, 2024.[13]

**Delta's Inability to Recover from the Outage**

30.     By Sunday, July 21, 2024, nearly every airline managed to recover and resume normal operations. However, Delta continued to cancel and delay various flights.

31.     On Monday, July 22, 2024, Delta canceled more than 1,250 flights, about a third of its schedule.[14] These cancellations accounted for nearly 70% of all flights within the United States. No other U.S. airline had canceled one-tenth as many flights.[15]

32.     On Tuesday, July 23, 2024, Delta continued to cancel and delay flights. By 2 p.m., that day, more than 450 flights had been cancelled and more than 1,000 flights had been delayed.[16]

33.     On Thursday, July 25, 2024, Delta announced that its "operational reliability" had returned to "normal."[17] However, passengers continued to report that Delta canceled their flights through July 31, 2024.

34.     Moreover, Delta reportedly canceled more flights between Friday and Tuesday than it did in 2018 and 2019 combined.[18] There were 5,470 flight cancellations for the airline between

---

[12] https://aspm.faa.gov/aspmhelp/index/Delay_Propagation.html (last accessed August 12, 2024).
[13] https://www.cnn.com/2024/07/23/business/delta-flight-cancellations/index.html (last accessed August 12, 2024).
[14] *Id.*
[15] *Id.*
[16] https://www.nytimes.com/2024/07/23/us/pete-buttigieg-delta-outage.html (last accessed August 12, 2024).
[17] https://news.delta.com/update/july-2024-operation/delta-starts-thursdays- operation-zero-cancellations (last accessed August 12, 2024).
[18] https://www.businessinsider.com/delta-canceled-more-flights-in-5-days-than-2- years-2024-7#:~:text=Delta%20canceled%20more%20flights%20in%205%20days%20after% 20the%20CrowdStrike,in%202018%20and%202019%20combined&text=Delta%2

Friday and Tuesday.[19] On the contrary, a total of 4,370 flights were canceled by Delta across the whole 2018 and 2019.[20]

35.     On Monday, July 22, 2024, Delta released the following statement, attributing its inability to fix their problems with its tracking systems and blamed its issue on Windows failures:

> Upward of half of Delta's IT systems worldwide are Windows based. The CrowdStrike error required Delta's IT teams to manually repair and reboot each of the affected systems, with additional time then needed for applications to synchronize and start communicating with each other.
>
> Delta's crew are fully staffed and ready to serve our customers, but one of Delta's most critical systems—which ensures all flights have a full crew in the right place at the right time—is deeply complex and is requiring the most time and manual support to synchronize.[21]

36.     Following the CrowdStrike outage, Delta attempted to blame CrowdStrike and Microsoft by retaining a legal counsel to pursue potential damages against CrowdStrike and Microsoft.[22]

37.     Unfortunately, CrowdStrike refused to accept blame for Delta's actions, stating that the threat of litigation "has contributed to a misleading narrative that CrowdStrike is responsible for Delta's IT decisions and responses to the outage."[23]

38.     According to CrowdStrike, Delta rejected repeated offers to help restore Delta's impacted systems.[24] In addition, CrowdStrike stated that its CEO "personally reached out to Delta's CEO to offer onsite assistance but received no response.[25]

---

0canceled%20more%20flights%20in%20less%20than%20a%20week%20due,it%2
0canceled%20a%20combined%205%2C370 (last accessed August 12, 2024).
[19] *Id.*
[20] *Id.*
[21] https://news.delta.com/update/july-2024-operation/delta-people-working-247- restore-operation-support-customers-get-crews (last accessed August 12, 2024).
[22] https://www.law360.com/articles/1863550/delta-hires-boies-schiller-to-recoup- outage-related-damages (last accessed August 12, 2024).
[23] https://apple.news/AWlK7OnFxRnGwB7FARQAMGg (last accessed August 12, 2024).
[24] *Id.*
[25] *Id.*

**The Overall Experience**

39.     Delta's passengers felt the overall brunt of this catastrophic event. Delta's failure to recover from the CrowdStrike outage left passengers stranded in airports across the nation for days at a time, with many miles from home.

40.     To add insult to injury, Delta provided customers with e-credits as compensation but made no effort to provide cash refunds as required by federal law.[26]

41.     Upon information and belief, Delta forced passengers who accepted e-credits or partial refunds to forgo their right to a refund.

42.     For the passengers who did exercise their right to a refund, Delta refused or ignored their requests, or failed to provide real-time assistance from customer service agents.

43.     Moreover, Delta refused to provide all affected passengers with accommodations including meals, hotels, and ground transportation vouchers, despite their promise to do so.

44.     Therefore, passengers were forced to spend thousands of dollars in unexpected expenses, including flights from other airlines, hotels, rental cars, ground transportation, and food.

45.     Delta refused to provide passengers with access to their belongings, thus stranding customers with limited necessities.

**Delta's Actions Violate Governmental Policies**

46.     According to the U.S. Department of Transportation's Airline Customer Service Dashboard, Delta made the following promises to passengers who were victims of a flight cancellation within the airline's control:[27]

- Meal or meal cash/voucher when cancellation results in passenger waiting for 3 hours or more for new flight.

---

[26] https://www.washingtonpost.com/transportation/2024/07/26/delta-canceled- flights-investigation-crowdstrike/# (last accessed August 12, 2024).
[27]https://www.transportation.gov/airconsumer/airline-customer-service-dashboard (last accessed August 12, 2024).

- Complimentary hotel accommodations for any passenger affected by an overnight cancellation.

- Complimentary ground transportation to and from hotel for any passenger affected by an overnight cancellation.

47.    Delta has also made similar promises to passengers affected by significant delays within the airline's control:[28]

- Meal or meal cash/voucher when flight delay results in passenger waiting for 3 hours or more for new flight.

- Complimentary hotel accommodations for any passenger affected by an overnight delay.

- Complimentary ground transportation to and from hotel for any passenger affected by an overnight delay.

48.    On July 22, 2024, Delta released a statement recommitting to its promises and pledged to offer affected passengers the following:[29]

**Extending a travel waiver.** Delta extended a travel waiver for all customers with travel booked from July 19-23. The waiver offers customers the ability to make a one-time change to their itinerary. The fare difference for customers will be waived when rebooked travel occurs on or before July 28, in the same cabin of service as originally booked. Customers are encouraged to manage changes to their travel via delta.com or the Fly Delta app.

**Right to a Refund Upon Request.** Customers whose travel has been disrupted due to a canceled or significantly delayed flight may choose to cancel their travel and receive an eCredit for the unflown portion of the trip or may instead request a refund for the unflown portion of the trip at delta.com/refund.

**Issuing SkyMiles Program miles or a travel voucher** in an amount based on the customer's affected travels.

**Covering eligible expenses** resulting from this flight disruption, including providing meal vouchers, hotel accommodations where available and ground transportation.

---

[28] *Id.*
[29] https://news.delta.com/update/july-2024-operation/delta-people-working-247- restore-operation-support-customers-get-crews (last accessed August 12, 2024).

**Reimbursement of eligible expenses.** Customers who have incurred hotel, meal or ground transportation expenses while in transit during this operational disruption may submit eligible expenses for reimbursement.

49.     On July 26, 2024, Delta made further commitments to affected customers.[30]

**Flight Cancellation/Extended Delay Refunds & Trip Cancellation Option**

Customers whose travel was disrupted due to a canceled or significantly delayed flight may choose to cancel their travel via Delta.com or the Fly Delta app and receive an automatic refund for the unflown portion of the trip. Since July 19, of the refunds processed, 70% were completed via Delta.com or the app.

**No Questions Asked Trip Cancellation**

Delta is also permitting customers with travel booked from July 19-28 who chose not to travel to cancel and request a refund of the unflown portion of their trip – regardless of whether their flight was canceled or significantly delayed. Enhanced refund flexibility applies to tickets with Delta-operated flights, purchased on or before July 23.

**Out-of-Pocket Expense Reimbursement**

We know many customers who experienced a significant delay or flight cancellation incurred unplanned, out-of-pocket expenses during the disruption period, between July 19 and July 28. Delta has expanded the list of eligible expenses that may be covered for this disruption, including flight tickets purchased on other airlines in the same cabin of service or lower, train and bus tickets, rental cars and ride shares.

As part of our Delta Customer Commitment, we will continue to cover reasonable costs for additional categories of expenses.
...

**Automatic Refunds for Bag and Seat Fees**

As an added gesture, Delta is automatically refunding all paid checked bag fees for customers who were charged for checking a bag since July 19 (when the disruption started). Delta is continuing to waive bag fees for up to three checked bags for customers traveling through 11:59 p.m. local time July 28.

Additionally, Delta is automatically refunding seat purchases including paid upgrade and preferred seats for customers who were not able to take advantage of those purchases. For example, if a customer paid for a Delta Comfort+ upgrade post

---

[30] https://news.delta.com/what-delta-doing-make-things-right-customers-impacted- crowdstrike-disruption (last accessed August 12, 2024).

purchase and did not travel in that upgraded seat, Delta is automatically refunding the fee.

No action is needed to receive either the baggage or upgrade fee refund; they are being processed automatically over the coming days.

For all ticket or fee refunds, customers will receive the refund back to their original form of payment. Customers may see multiple refund transactions in their credit card or bank statement as fee refunds are processed separately from flight refunds. Customers eligible for out-of-pocket expense reimbursement will receive an email with instructions on how to receive the reimbursement.

**Customer Apology Gesture**

Customers impacted by a cancellation or significant delay during the disruption period also received an email offering SkyMiles or an electronic Transportation Credit Voucher (ETCV).

**Extending a travel waiver**

Delta extended a travel waiver for all customers with travel booked from July 19-28. The waiver offers customers the ability to make a one-time change to their itinerary. The fare difference for customers will be waived when rebooked travel occurs on or before Aug. 4, in the same cabin of service as originally booked. Customers are encouraged to manage changes to their travel via delta.com or the Fly Delta app.

50.     Furthermore, on July 25, 2024, U.S. Secretary of Transportation Pete Buttigieg made clear in a statement on his X (formerly Twitter) account: "If you've racked up out-of-pocket expenses on hotels, meals, alternative flights, etc. Delta is required to reimburse passengers."[31]

Delta Violates Department of Transportation Regulations

51.     The Department of Transportation "require[es] automatic refunds to consumers when a U.S. air carrier... cancels or makes a significant change to a scheduled flight to, from, or within the United States and the consumer is not offered or rejects alternative transportation and travel credits, vouchers, or other compensation."[32]

---

[31] https://x.com/SecretaryPete/status/1816550304533369165 (last accessed August 12, 2024).
[32] https://www.govinfo.gov/content/pkg/FR-2024-04-26/pdf/2024-07177.pdf (last accessed August 12, 2024).

52.     Automatic refunds must be provided "promptly," which is defined as "within 7 business days for credit card payments and within 20 calendar days for other forms of payment."[33]

53.     The Department of Transportation also "require[es] refunds to consumers for fees for ancillary services that passengers paid for but did not receive and for checked baggage fees if the bag is significantly delayed."[34]

54.     To ensure passengers know that they are entitled to a refund, the Department of Transportation further "require[es] carriers and ticket agents to inform consumers of their right to a refund if that is the case before making an offer for alternative transportation, travel credits, vouchers, or other compensation in lieu of refunds."[35]

55.     Additionally, Delta's conditions its offer of reimbursements to passengers through a waiver thereby releasing Delta of all legal claims passengers have against Delta, thus violating the Department of Transportation's Regulations.

56.     Delta's waiver states the following:

**By accepting payment, you acknowledge this payment as full settlement of and hereby releases Delta Air Lines, Inc. from any and all claims the undersigned may have against Delta Air Lines, Inc. to this date.**

57.     Delta's waiver is unenforceable and unconscionable because it deprives customers of their ability to enforce their legal rights, specifically, their "right to a refund if that is the case before making an offer for alternative transportation, travel credits, vouchers, or other compensation in lieu of refunds."[36]

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] https://www.govinfo.gov/content/pkg/FR-2024-04-26/pdf/2024-07177.pdf (last accessed August 12, 2024).

58.     Moreover, Delta's offer of reimbursement is only a fraction of what passengers are entitled to.

**Delta's Shortcomings Caused Federal Scrutiny**

59.     On July 23, 2024, Secretary Buttigieg released a statement that the Department of Transportation had opened an investigation into Delta "to ensure the airline is following the law and taking care of its passengers during continued widespread disruptions."[37]

60.     Secretary Buttigieg stated:[38]

"There's a lot of things I'm very concerned about, including people being on hold for hours and hours, trying to get a new flight, people having to sleep on airport floors, even accounts of unaccompanied minors being stranded in airports, unable to get on a flight."

61.     On July 24, 2024, Secretary Buttigieg took to his X (formerly known as "Twitter") account saying, "On hold for hours, sleeping on airport floors, unaccompanied minors stranded— these are the stories we are hearing from Delta passengers."[39]

62.     According to The Washington Post, the Department of Transportation's investigation began examining text messages sent by Delta to passengers "that regulators say did not spell out their rights to a refund."[40]

63.     U.S. Senator Maria Cantwell (D-Wash.), Chair of the Senate Committee on Commerce, Science and Transportation, sent a letter to Delta Air Lines CEO Ed Bastian regarding the airline's operational and customer communications problems in the wake of the CrowdStrike outage.[41]

---

[37] https://www.npr.org/2024/07/23/nx-s1-5049792/deltas-airlines-delays-and- cancelations-prompt-dot-investigation (last accessed August 12, 2024).
[38] *Id.*
[39] https://x.com/SecretaryPete/status/1816147652288913674 (last accessed August 12, 2024).
[40] https://www.washingtonpost.com/transportation/2024/07/26/delta-canceled- flights-investigation-crowdstrike/# (last accessed August 12, 2024).
[41] https://www.commerce.senate.gov/services/files/374240F2-C0B2-4B38-8B64- 37678CDF9D28 (last accessed August 12, 2024).

64.     In the letter, Senator Cantwell expressed concern "that Delta is failing to meet the moment and adequately protect the needs of passengers."[42]

65.     In particular, Senator Cantwell expressed concern that Delta was violating Section 503 the Federal Aviation Administration Reauthorization Act of 2024, which codified the right to a refund for airline passengers whose flights are canceled, significantly delayed, or significantly changed.[43]

66.     Senator Cantwell stated that "Delta's public website does not accurately and transparently reflect a passenger's legal right to a refund."[44]

67.     Similarly, Section 505 of the FAA law provides that "customers should be able to access real-time assistance from customer service agents of air carriers without an excessive wait time, particularly during times of mass disruptions." In her letter, Senator Cantwell noted reports of Delta's failure to connect passengers with its customer service representatives.[45]

68.     Senator Cantwell demanded Delta to "make clear to all its customers subjected to cancellations and significant delays and changes, including as a result of the technology outage, that they are entitled to refunds as a matter of law" and that Delta "should invest significant resources into its customer service operations to ensure that customers are made whole in short order."[46]

## **CLASS ALLEGATIONS**

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*

69.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure.

70.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**
All individuals in the United States who purchased airline tickets through Delta, or for flights on Delta, to, from, or within the States, and sought to cancel their flights, or had their flights cancelled, or about July 19, 2024, to July 31, 2024.
by Defendant (the "Class").

**Florida Subclass**
All individuals residing in Florida who purchased airline tickets through Delta, or for flights on Delta, to, from, or within the States, and sought to cancel their flights, or had their flights cancelled, or about July 19, 2024, to July 31, 2024.
by Defendant (the "Florida Class").

**Georgia Subclass**
All individuals residing in Georgia who purchased airline tickets through Delta, or for flights on Delta, to, from, or within the States, and sought to cancel their flights, or had their flights cancelled, or about July 19, 2024, to July 31, 2024.
by Defendant (the "Georgia Class").

71.     Collectively, the Class and the Florida Subclass are referred to as the "Classes" or "Class Members."

72.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

73.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

74.     **Numerosity**: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, and obtainable by Plaintiff only through the discovery process. Upon information and belief, the class consists of tens of thousands of people. The number of Class members can be determined based on Delta's records.

75.     **Commonality:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

  a.  Whether federal regulations require Delta to provide passengers a refund when Delta canceled all passenger's flight;
  b.  Whether Delta committed common law fraud;
  c.  Whether Delta was unjustly enriched when it collected passenger's monies for travel expenses, but did not reimburse in full or in part for their cancelled and/or delayed flights;
  d.  Whether Delta violated the Florida's Deceptive and Unfair Trade Practices Act;

76.     **Typicality**: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class member's claims arise out Delta's conduct, statements, and unlawful, unfair, and deceptive acts and practices.

77.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the

Class Members and the infringement of the rights and the damages suffered are typical of other Class Members.

78. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

## CAUSES OF ACTION
### (*On behalf of Plaintiff and the Classes*)

## COUNT 1: BREACH OF CONTRACT
## FAILURE TO REFUND FARE

79. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

80. Defendant offered Plaintiff and Class members transportation services in exchange for payment through passenger tickers for air travel between specific locations, on specific flights, promised to be administered on a specific date and time.

81. Defendant's offer to provide transportation services in the form of air travel included Defendant's promise to refund Plaintiff and the Class Members for all cancellations and/or significantly changed flights.

17

82.     Such offers and terms were specifically identified in Defendant's Conditions of Carriage entered into between Plaintiff and the Class Members and Defendant, effective at the time of the ticket purchases.

83.     The Conditions of the Carriage reflect Defendant's promise to uphold their end of the bargain, which they themselves voluntarily imposed.

84.     Moreover, Defendant made the offer in writing through their direct channels (including Delta's direct-to-consumer sales website, www.delta.com, and the company's mobile applications) as well traditional and online travel agencies.

85.     Sections of the Conditions of Carriage applicable to the Plaintiff and Class Members claims confirm their contractual rights to refund where a flight has been cancelled and/or significantly changed, regardless of the reason for the cancellation or delay.

86.     Rule 19 of Delta's Conditions or Carriage (attached as Exhibit A) provides as follows:

A. Delta's Liability in the Event of Schedule Changes, Delays and Flight Cancellations

If there is a flight cancellation, diversion, delay of greater than 120 minutes, or that will cause a passenger to miss connections, Delta will (at passenger's request) cancel the remaining ticket and refund the unused portion of the ticket and unused ancillary fees in the original form of payment in accordance with Rule 22.

87.     Rule 22 of Delta's Conditions of Carriage provides as follows:

RULE 22: REFUNDS

A. Involuntary Refunds

If a refund is required because of Delta's failure to operate on schedule or refusal to transport (except as a result of passenger's failure to comply with the contract of carriage), the following refund will be made directly to you:

1) If no portion of the ticket has been used, the refund will be an amount equal to the fare paid.

2)  If a portion of the ticket has been used and termination (interruption) occurs:

a)  At A Fare Breakpoint - The refund will be an amount equal to the fare paid for the unused transportation from the point of termination (interruption) to the destination or next Stopover point named on the ticket, or to a point at which transportation is to be resumed. No refund will apply when alternate transportation is provided by Delta and accepted by the passenger.

b)  Within A Fare Component - The refund will be an amount equal to the percentage of unflown mileage to fare component total mileage by prorating the fare paid for the fare component, from the point of termination/interruption to the destination, or next Stopover point named on the ticket, or to the point at which transportation is to be resumed. No refund will apply when alternate transportation is provided by Delta and accepted by the passenger.

88.     Defendant's offer contained a definite promise by Defendant to provide Plaintiff and the Class Members the power to agree to the terms of the Defendant's offer to provide transportation services, including but not limited to, through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

89.     Plaintiff and the Class Members accepted Defendant's offer to provide transportation services, agreeing to the material terms contained in Defendant's offer.

90.     Plaintiff and the Class Members accepted the offer by purchasing the airline tickets, thereby agreeing to the material terms contained in Defendant's offer.

91.     The agreement between Plaintiff, the Class Members, and the Defendant including an exchange of promise or value, in other words, consideration. Here, Plaintiff and the Class Members provided Defendant with consideration in the form of monies paid for the fair, taxes, and additional charges.

92.     Plaintiff and the Class Members performed all obligations and conditions required and expected of them and/or had a valid excuse for not performing any such obligations.

93.     However, Defendant failed to uphold their obligations when Defendant cancelled and/or significantly changed Plaintiff and the Class Members' flights and did not return the consideration paid for the performance.

94.     Defendant has failed to provide and/or has outright refused to provide refunds to Plaintiff and the Class Members for such cancelled and/or significantly changed flights.

95.     Defendant was contractually obligated to provide refunds to Plaintiff and the Class Members in such circumstances and failed to uphold its end of the deal.

96.     As a result, Defendant has failed to perform and/or has materially breached its contracts with Plaintiff and the Class Members.

97.     Because of Defendant's failure to perform under the contract, Plaintiff and the Class Members have been damaged and/or did not receive the refunds, benefits, payment, and/or performance to which they were entitled.

98.     Therefore, Plaintiff and the Class Members are entitled to fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

## <u>COUNT 2: BREACH OF CONTRACT</u><br><u>FAILURE TO COVER ADDITIONAL AMENITIES</u>

99.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

100.     Defendant offered Plaintiff and Class members transportation services in exchange for payment through passenger tickers for air travel between specific locations, on specific flights, promised to be administered on a specific date and time.

101.     Defendant's offer to provide transportation services in the form of air travel included Defendant's promise to refund Plaintiff and the Class Members for all cancellations and/or significantly changed flights.

102.     Such offers and terms were specifically identified in Defendant's Conditions of Carriage entered into between Plaintiff and the Class Members and Defendant, effective at the time of the ticket purchases.

103.     The Conditions of the Carriage reflect Defendant's promise to uphold their end of the bargain, which they themselves voluntarily imposed.

104.     Moreover, Defendant made the offer in writing through their direct channels (including Delta's direct-to-consumer sales website, www.delta.com, and the company's mobile applications) as well traditional and online travel agencies.

105.     Sections of the Conditions of Carriage applicable to the Plaintiff and Class Members claims confirm their contractual rights to refund where a flight has been cancelled and/or significantly changed, regardless of the reason for the cancellation or delay.

106.     Rule 19(B) of Delta's Conditions or Carriage provides as follows:

B. Delta's Liability for Additional Amenities in the Event of Schedule Changes, Delays and Flight Cancellations

Except as provided above, Delta shall have no liability if the flight cancellation, diversion or delay was due to force majeure. As used in this rule, "force majeure" means actual, threatened or reported:

(1) Weather conditions or acts of God;
(2) Riots, civil unrest, embargoes, war, hostilities, or unsettled international conditions;
(3) Strikes, work stoppages, slowdowns, lockout, or any other labor- related dispute;
(4) Government regulation, demand, directive or requirement;
(5) Shortages of labor, fuel, or facilities; or
(6) Any other condition beyond Delta's control or any fact not reasonably foreseen by Delta.

However, when a passenger's travel is interrupted for more than 4 hours after the scheduled departure time as a result of flight cancellation or delay on the date of travel other than from force majeure, Delta will provide the passenger with the following additional amenities during the delay:

(a) Hotels

21

If overnight accommodations are available at Delta contracted facilities, Delta will provide the passenger with a voucher for one night's lodging when the delay is during the period of 10:00 pm to 6:00 am. Delta will provide free public ground transportation to the hotel if the hotel does not offer such service. If accommodations are not available, Delta will provide the passenger with a voucher that may be applied to future travel on Delta equal in value to the contracted hotel rate, up to $100 USD.

(b) Ground Transportation

In lieu of lodging or other amenities, Delta will furnish ground transportation to the destination airport if a passenger's flight is diverted to an alternative airport and if the destination on the ticket and the diverted airport destination are within the following city groups:

San Francisco, CA (SFO)/ Oakland, CA (OAK)/ San Jose, CA (SJC) Los Angeles, CA (LAX)/ Long Beach, CA (LGB)/ Ontario, CA (ONT)/ Santa Ana, CA (SNA) Denver, CO (DEN)/ Colorado Springs (COS) O'Hare – Chicago, IL (ORD)/ Midway – Chicago, IL (MDW) Dallas-Ft. Worth, TX (DFW)/ Dallas, TX Love Field (DAL) Bush Intercontinental – Houston, TX (IAH)/ Hobby – Houston, TX (HOU) Fort Lauderdale, FL (FLL)/ Miami, FL (MIA)/ West Palm Beach, FL (PBI) Baltimore, MD (BWI)/ National – Washington, DC (DCA)/ Dulles – Washington, DC (IAD) Newark, NJ (EWR)/ LaGuardia – New York, NY (LGA)/ John F. Kennedy – New York, NY (JFK) Orlando, FL (MCO)/ Tampa, FL (TPA)/ Daytona Beach, FL (DAB)/ Melbourne, FL (MLB)/Sarasota Bradenton, FL (SRQ).

(c) Additional Amenities

Delta will provide such additional or alternative amenities as are necessary to maintain the safety and/or welfare of customers with special needs such as unaccompanied children and Persons with a Disability. Such amenities will be furnished consistent with special needs and/or circumstances.

107.    Defendant's offer contained a definite promise by Defendant to provide Plaintiff and the Class Members the power to agree to the terms of the Defendant's offer to provide transportation services, including but not limited to, through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

108.    Plaintiff and the Class Members accepted Defendant's offer to provide transportation services, agreeing to the material terms contained in Defendant's offer.

109.    Plaintiff and the Class Members accepted the offer by purchasing the airline tickets, thereby agreeing to the material terms contained in Defendant's offer.

110.    The agreement between Plaintiff, the Class Members, and the Defendant including an exchange of promise or value, in other words, consideration. Here, Plaintiff and the Class Members provided Defendant with consideration in the form of monies paid for the fair, taxes, and additional charges.

111.    Plaintiff and the Class Members performed all obligations and conditions required and expected of them and/or had a valid excuse for not performing any such obligations.

112.    However, Defendant failed to uphold their obligations when Defendant cancelled and/or significantly changed Plaintiff and the Class Members' flights and did not return the consideration paid for the performance.

113.    Defendant has failed to provide and/or has outright refused to provide refunds, benefits, payments and/or performance Plaintiff and the Class Members for such cancelled and/or significantly changed flights.

114.    Defendant was contractually obligated to provide refunds, benefits, payments and/or performance to Plaintiff and the Class Members in such circumstances and failed to uphold its end of the deal.

115.    As a result, Defendant has failed to perform and/or has materially breached its contracts with Plaintiff and the Class Members.

116.    Because of Defendant's failure to perform under the contract, Plaintiff and the Class Members have been damaged and/or did not receive the refunds, benefits, payment, and/or performance to which they were entitled.

117.    Therefore, Plaintiff and the Class Members are entitled to fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

**COUNT 3: BREACH OF IMPLIED CONTRACT**

118.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

119.    In addition to the express written contractual terms between Plaintiff and Delta relating to refunds for flights that have been cancelled and/or significantly delayed, as set forth in paragraphs 48 and 49, *supra*, Delta entered into implied contracts with Plaintiff and the members of the putative classes.

120.    Delta promised travelers with disrupted flights refunds and reimbursements for their out-of-pocket expenses.

121.    Delta also promised to refund the unplanned, out-of-pocket expenses Plaintiff and the class members attained during the disruptive period.

122.    Delta, Plaintiff and Class members assented to the terms of those implied contracts.

123.    Plaintiff and the Class members suffered injuries as a result of Delta's breach of these implied contracts.

## <u>COUNT 4: COMMON LAW FRAUD</u>

124.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

125.    Delta materially misrepresented and/or omitted Plaintiff and the class members' ability to receive refunds for cancelled flights.

126.    Delta falsely stated that Plaintiff and the Class Members only able to receive travel vouchers, but omitted the fact that customers were entitled to receive refunds. Thus, Plaintiff and the Class Members were fraudulently induced to purchasing tickets without any means for attaining their refunds for the amount they paid.

24

127.    Delta had a duty to disclose that Plaintiff and the class members were entitled to refunds when Plaintiff and the class members contacted Delta seeking refunds.

128.    Delta had a duty to disclose that Plaintiff and the class members were entitled to reimbursement of out-of-pocket expenditures incurred as a result of Delta's cancellations.

129.    These misrepresentations and omissions were made by Delta with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

130.    Plaintiff and Class members reasonably relied on these omissions and suffered damages as a result.

**COUNT 5: UNJUST ENRICHMENT**

131.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

132.    Plaintiff and the class conferred a direct benefit on Delta by purchasing airline tickets.

133.    Delta knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the class.

134.    Delta's retention of these benefits is unjust and inequitable due to the conduct described herein.

135.    Delta's actions were a direct and proximate cause of Plaintiff and the Class Members' claim; thus, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**COUNT 6: VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

136.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

137.     The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq. (FDUTPA), is designed to protect consumers from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

138.     Plaintiff Aunali is a "consumer" as defined in the FDUTPA.

139.     Delta engages in "trade or commerce" as defined in the FDUTPA.

140.     In the course of Delta's business, it engaged in conduct that was consumer-facing and did so in a manner which was materially deceptive and unfair towards customers such as Plaintiff Aunali.

141.     Delta had actual knowledge of a consumer's right to a refund as described herein but refused to provide refunds to consumers.

142.     Delta had actual knowledge of a consumer's right to have their costs covered as described herein but refused to reimburse consumers.

143.     Delta's unfair and deceptive practices were done to enrich themselves to the detriment of Plaintiff Aunali and the Florida Class.

144.     As set forth above, Delta's actions occurred in the conduct of trade or commerce and constitute unfair and/or deceptive trade practices under the FDUTPA.

145.     Plaintiff Aunali and the Florida Class relied upon and were deceived by Delta's unfair and deceptive misrepresentations of material fact when deciding to purchase airline tickets from Delta.

146.     Plaintiff Aunali and the Florida Class were injured as a result of Delta's conduct and suffered ascertainable monetary loss. Plaintiff Aunali and the class members conferred to Delta monetary value but did not receive the benefit of their bargain.

147.    Pursuant to the FDUTPA, Plaintiff Aunali and the Florida Class are entitled to reasonable legal fees and costs incurred in connection with this action.

## COUNT 7: VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (UDPTA) O.C.G.A. § 10-1-370 ET SEQ.

148.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

149.    The Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A., et seq. (UDPTA), is designed to protect consumers from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

150.    Plaintiff Aunali is a "consumer" as defined in the UDPTA.

151.    Delta engages in "trade or commerce" as defined in the UDPTA.

152.    In the course of Delta's business, it engaged in conduct that was consumer-facing and did so in a manner which was materially deceptive and unfair towards customers such as Plaintiff Aunali.

153.    Delta had actual knowledge of a consumer's right to a refund as described herein but refused to provide refunds to consumers.

154.    Delta had actual knowledge of a consumer's right to have their costs covered as described herein but refused to reimburse consumers.

155.    Delta's unfair and deceptive practices were done to enrich themselves to the detriment of Plaintiff Aunali and the Georgia Class.

156.    As set forth above, Delta's actions occurred in the conduct of trade or commerce and constitute unfair and/or deceptive trade practices under the UDPTA.

157.    Plaintiff Aunali and the Georgia Class relied upon and were deceived by Delta's

unfair and deceptive misrepresentations of material fact when deciding to purchase airline tickets from Delta.

158.     Plaintiff Aunali and the Georgia Class were injured as a result of Delta's conduct and suffered ascertainable monetary loss. Plaintiff Aunali and the class members conferred to Delta monetary value but did not receive the benefit of their bargain.

159.     Pursuant to the UDPTA, Plaintiff Aunali and the Georgia Class are entitled to reasonable legal fees and costs incurred in connection with this action.

<h2 style="text-align:center"><u>PRAYER FOR RELIEF</u></h2>

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Classes and counsel for Plaintiff(s) as Class Counsel;

B.   For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C.   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.   For prejudgment interest and post-judgment on all amounts awarded;

E.   Grant appropriate injunctive and/or declaratory relief, including without limitation, an order that requires Delta to issue refunds of ticket prices to any member of the class who requests a refund;

F.   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, and

G.   Such other relief as this Court deems just and proper.

<h2 style="text-align:center"><u>DEMAND FOR JURY TRIAL</u></h2>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: August 14, 2024                              Respectfully Submitted,

Thomas Sizemore, Esq.
GA Bar No. 183295
**POULIN | WILLEY | ANASTOPOULO**
Paul J. Doolittle, Esq.
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email:
TeamSizemore@poulinwilley.com
Paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*ATTORNEY FOR THE PLAINTIFF*